# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASON MOUNT**, <br><br> Plaintiff, <br><br> v. <br><br> **KIRSTJEN NIELSEN**, *Secretary, U.S. Department of Homeland Security*,[1] <br><br> Defendant. | Case No. 16-cv-2532 (CRC) |

## MEMORANDUM OPINION

Plaintiff Jason Mount filed a request under the Freedom of Information Act ("FOIA") with the Department of Homeland Security seeking all records held by the Department's Office of the Inspector General ("OIG") "regarding an allegation that . . . Supervisory Special Agent Peter Edge lost his official credentials to a prostitute and the credentials had to be retrieved by local police."  Mem. P. & A. Supp. Pls.' Opp'n to Def.'s Mot. Summ. J. ("Pls.' MSJ") at 2.  The Department responded with a so-called "*Glomar* response," refusing to confirm or deny that it had any records responsive to his request.  It based its *Glomar* response on Exemption 7(C) of FOIA.  Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s MSJ") at 1.  The parties have filed cross motions for summary judgment.  Because the Department properly asserted its *Glomar* response, the Court will grant the Department's motion and deny Mount's.

FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request."  DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (citation omitted).  In order to

---

[1] Secretary Nielsen, as former Secretary Jeh Johnson's current successor, has been automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

properly balance legitimate governmental and privacy interests that the release of documents could harm, Congress carved out nine exemptions from FOIA's reach.  See 5 U.S.C. § 552(b).  These exceptions are to be narrowly construed, and the agency has the burden of justifying any withholding it makes under them.  DiBacco, 795 F.3d at 183–84.

Courts have also recognized that "[i]n certain cases, merely acknowledging the existence of" records responsive to a FOIA request "would itself 'cause harm cognizable under [a] FOIA exception.'"  People for the Ethical Treatment of Animals v. NIH ("PETA"), 745 F.3d 535, 540 (D.C. Cir. 2014) (citation omitted) (second alteration in original).  In such situations, an agency may issue what is known as a "*Glomar* response" refusing to confirm or deny the existence (or non-existence) of any responsive records.  Id.[2]  An agency's *Glomar* response is valid "if the fact of the existence or nonexistence of agency records falls within a FOIA exception."  Id. (citation omitted).  The Court can rely on agency affidavits to justify a *Glomar* response, as with other withholdings.  Id.

Here, the Department has based its *Glomar* response on Exemption 7(C), which protects from disclosure "records or information compiled for law enforcement purposes" whose release "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C).  If the two requirements of Exception 7(C) are met, then that exemption "authorizes a *Glomar* response unless the public interest in disclosure is strong enough to justify the privacy invasion."  PETA, 745 F.3d at 542.

---

[2] This name is derived from the CIA's refusal to confirm or deny records related to the *Hughes Glomar Explorer*, a ship used in a classified CIA project to raise a sunken Soviet submarine for U.S. intelligence analysis.  PETA, 745 F.3d at 540.

The Department contends that it meets the requirements under Exemption 7(C) and thus its *Glomar* response was proper. Mount responds that the public interest outweighs any privacy interest and disclosure therefore is required.[3] Because the Court agrees that the requirements of Exemption 7(C) are met and that Mount has failed to demonstrate that the public interest is strong enough to outweigh any privacy invasion, the Court will uphold the Department's *Glomar* response and grant it summary judgment.

As an initial matter, both requirements for Exemption 7(C) are met here. With respect to the first requirement—that records be compiled for law enforcement purposes—the D.C. Circuit has articulated a two-part test: (1) that "the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws'" and (2) that "there is a rational nexus between the investigation at issue and the agency's law enforcement duties." Jefferson v. Dep't of Justice, Office of Professional Responsibility, 284 F.3d 172, 177 (D.C. Cir. 2002) (citation omitted). As Assistant Counsel to the Inspector General Jonathan Parnes explained in his declaration, "[o]ne of OIG's statutory responsibilities" is to "investigate[] fraud, waste, and abuse involving DHS programs and operations, including alleged misconduct by DHS employees" and to make referrals to the Attorney General if its investigation yields "reasonable grounds to believe there has been a violation of Federal criminal law." Decl. of Jonathan Parnes ¶ 9. Given this function,

---

[3] Mount also argues that the Department has "not provided any documentation whatsoever, not even a *Vaughn* index so that th[e] Court could review the documents *In Camera* and determine whether redactions may appropriately erase any privacy concerns." Pls.' MSJ at 7. But this argument is beside the point. For one, the requirements to produce a *Vaughn* index and to identify segregable portions of documents do not apply when a proper *Glomar* response has been asserted. PETA, 745 F.3d at 540. For another, the relevant question here is not whether the *contents* of any records, if they exist, would be protected by Exemption 7(C), but rather whether the very *existence* of the records is a fact protected by Exemption 7(C). See, e.g., id. Whether the Department has adequately justified any assertion that the underlying documents are protected by Exemption 7(C) is thus irrelevant to the Court's inquiry here.

any OIG investigation of a Special Agent losing his credentials to a prostitute would be related to the enforcement of federal laws and connected to OIG's law enforcement duties.[4]

The second aspect of Exception 7(C)—that the release of documents would constitute an unwarranted invasion of personal privacy—is also clearly met. The D.C. Circuit "ha[s] repeatedly recognized the 'substantial' privacy interest held by 'the targets of law-enforcement investigations . . . in ensuring that their relationship to the investigations remains secret.'" PETA, 745 F.3d at 541 (quoting Roth v. U.S. Dep't of Justice, 641 F.3d 1161, 1174 (D.C. Cir. 2012)) (second alteration in original). "Indeed, '[t]here can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of [a law enforcement] investigation.'" Id. at 542 (citation omitted) (alterations in original). That is precisely the harm that would follow from the Department's confirmation of any records responsive to Mount's request.

Given that the requirements of Exemption 7(C) are met, that exemption "authorizes a *Glomar* response unless the public interest in disclosure is strong enough to justify the privacy invasion." Id. Mount contends that the public interest in knowing how the Department handles allegations of misconduct is sufficient to override the privacy interest here. Pl.'s MSJ at 10. But the D.C. Circuit "ha[s] consistently found that interest, without more, insufficient to justify disclosure when balanced against the substantial privacy interests weighing against revealing the targets of a law enforcement investigation." PETA, 745 F.3d at 543. Mount does not provide "more" here. Consequently, under D.C. Circuit precedent such as PETA, the public interest is

---

[4] Unsurprisingly, other judges on this Court have also recognized that agency OIG investigatory files constitute records compiled for law enforcement purposes. See, e.g., Nat'l Whistleblower Ctr. v. Dep't of Health & Human Services, 849 F. Supp. 2d 13, 27–28 (D.D.C. 2012).

4

not strong enough to justify the privacy invasion.  The Department's *Glomar* response is therefore proper.

For the foregoing reasons, the Court will grant the Department's motion for summary judgment and deny Mount's.  A separate Order will accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  February 5, 2018